IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA                           PLAINTIFF/RESPONDENT

VS.                                CASE NO. 3:15-CR-30002-PKH-MEF-1

TRAVIS ALLEN BLOUNT, JR.                           DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody filed on June 29, 2016.  (Doc. 91)  Petitioner filed

supplements to his motion on July 14, 2016 (Doc. 97), August 1, 2016 (Doc. 98), and April 19, 2017

(Doc. 119).  The Government filed its response on October 3, 2016.  (Doc. 103)  Petitioner filed a

reply to the Government's response on January 24, 2017.  (Doc. 110)  An evidentiary hearing was

held on June 28, 2017.  The matter is ready for report and recommendation.

### I. Background

On January 20, 2015, a Criminal Complaint was filed against Defendant/Petitioner, Travis

Allen Blount, Jr. ("Blount"), alleging that from at least April 2013 through October 31, 2014, Blount

engaged in a scheme to defraud and to obtain money from others by means of false and fraudulent

pretenses, representations, and promises, and in furtherance of this scheme Blount used and caused

to be used the United States Postal Service, a commercial interstate carrier such as Federal Express,

and wire communications transmitted in interstate and foreign commerce via wire transfers of funds

to banks, emails, text messages, facsimiles, and telephone calls.  (Doc. 1, ¶¶ 1-6)  Blount was

charged with: three counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2 (Doc. 1, ¶¶ 7-12);

one count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (Doc. 1, ¶¶ 13-14); and, two counts

of money laundering, in violation of 18 U.S.C. §§ 1957(a) and (d), and 2 (Doc. 1, ¶¶ 15-18).  Blount was arrested on January 22, 2015, in the Western District of Missouri (Doc. 10), and Rule 5 documents were received by this Court on January 27, 2015 (Doc. 3).  Blount made his initial appearance before the undersigned, Hon. Mark E. Ford, U. S. Magistrate Judge, on February 9, 2015.  (Doc. 6)  The Court appointed James B. Pierce ("Pierce"), Assistant Federal Public Defender, to represent Blount.  (Docs. 6, 8)  Blount waived the issues of probable cause and detention, and he was ordered detained and remanded to the custody of the United States Marshal's Service.  (Docs. 6, 9)

On February 25, 2015, Blount was named in an Indictment[1] charging him with: conspiracy to violate 18 U.S.C. § 2314, all in violation of 18 U.S.C. § 371; three counts of aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; four counts of aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; two counts of aiding and abetting interstate transportation of goods to conceal a scheme to defraud, in violation of 18 U.S.C. §§ 2314 and 2; and, four counts of aiding and abetting money laundering, in violation of 18 U.S.C. §§ 1957(a) and (d), and 2.  (Doc. 13)  Blount appeared with his appointed counsel for arraignment on March 4, 2015, at which time Blount entered a not guilty plea to the Indictment.  (Doc. 27)

On April 15, 2015, Blount was named in a Superseding Indictment[2] charging him with: conspiracy to violate 18 U.S.C. § 2314, all in violation of 18 U.S.C. § 371; four counts of aiding and abetting mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; one count of mail fraud, in violation of 18 U.S.C. § 1341; two counts of aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343

---

[1] Blount's wife, Sandra J. Blount, was also named as a defendant in the Indictment.

[2] Blount's wife, Sandra J. Blount, was also named as a defendant in the Superseding Indictment.

and 2; two counts of wire fraud, in violation of 18 U.S.C. § 1343; two counts of aiding and abetting interstate transportation of goods to conceal a scheme to defraud, in violation of 18 U.S.C. §§ 2314 and 2; two counts of transportation of goods to conceal a scheme to defraud, in violation of 18 U.S.C. § 2314; three counts of money laundering, in violation of 18 U.S.C. §§ 1957(a) and (d); one count of aiding and abetting money laundering, in violation of 18 U.S.C. §§ 1957(a) and (d), and 2; and, one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 43) Blount appeared with his appointed counsel for arraignment on April 24, 2015, at which time Blount entered a not guilty plea to the Superseding Indictment. (Doc. 47)

On May 19, 2015, Blount appeared with counsel before the Hon. P. K. Holmes, III, Chief U.S. District Judge, for a change of plea hearing. (Doc. 51) A written Plea Agreement (Doc. 52) was presented to the Court, and Blount pleaded guilty to the following counts of the Superseding Indictment: Count Two (mail fraud, aiding and abetting); Count Seven (wire fraud, aiding and abetting); Counts Sixteen and Eighteen (money laundering); and, Count Twenty (felon in possession of a firearm). (Docs. 51, 52) The Court accepted the plea and ordered a presentence investigation. (Doc. 51)

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on August 28, 2015. (Doc. 60) On September 28, 2015, the Government advised that it had 23 objections to the initial PSR. (Doc. 72) Some of the Government's objections sought corrections to information reported in the initial PSR, while others concerned the number of victims, the loss amount, the application of specific offense characteristics enhancements, the criminal history score and category, and the Guidelines calculations flowing from the requested changes. (Id.) On September 28, 2015, Blount advised that he had 34 objections to the initial PSR, including

-3-

objections to the loss amounts attributed to many of the victims, the number of victims and total loss amount, and to specific offense characteristics enhancements assessed.  (Doc. 71)  The Probation Officer addressed these numerous objections in an Addendum to the PSR.  (Doc. 79-3)

On November 25, 2015, a final PSR was submitted to the Court.  (Doc. 79)  The final PSR determined that Blount's conduct called for a base offense level of seven.  (Doc. 79, ¶ 205)  Finding that the loss was more than $550,000 but less than $1,500,000, the offense level was increased by 14 levels.  (Doc. 79, ¶ 206)  A two-level increase was assessed because the offense involved 10 or more victims.  (Doc. 79, ¶ 207)  A two-level increase was assessed because the offense involved sophisticated means and Blount intentionally engaged in or caused the conduct constituting sophisticated means.  (Doc. 79, ¶ 208)  A two-level enhancement was made for possession of a firearm in connection with the offense.  (Doc. 79, ¶ 209)  A one-level increase was assessed because Blount was convicted under 18 U.S.C. § 1957.  (Doc. 79, ¶ 210)  Finally, a two-level enhancement was assessed because Blount abused a position of private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.  (Doc. 79, ¶ 212)  Due to these enhancements, Blount's adjusted offense level was determined to be 30.  (Doc. 79, ¶ 214)  After a three-level reduction for acceptance of responsibility was made, his total offense level was determined to be 27.  (Doc. 79, ¶¶ 216-218)

Blount's criminal history resulted in a criminal history score of 14, placing him in criminal history category VI.  (Doc. 79, ¶¶ 249-251)  The statutory maximum term of imprisonment for Blount's mail fraud and wire fraud convictions is 20 years each.  The statutory maximum term of imprisonment for Blount's money laundering and felon in possession of a firearm convictions is 10 years each.  The total statutory maximum term of imprisonment Blount faced was 70 years.  (Doc.

79, ¶ 284)  Based upon a total offense level of 27 and a criminal history category of VI, Blount's advisory Guidelines range was determined to be 130 to 162 months imprisonment. (Doc. 79, ¶ 285)

Blount appeared for sentencing on January 5, 2016.  (Doc. 84)  After finding that the enhancements for (a) possession of a firearm in connection with the evidence and (b) abuse of a position of private trust were proper, and due to the Government's refusal to move for the third point of acceptance of responsibility, the Court determined that Blount's total offense level was 28, resulting in an advisory Guidelines range was 140-175 months imprisonment.  (Doc. 127, pp. 199-203)  The Court imposed a sentence of: 120 months imprisonment on Count Two (mail fraud); 120 months imprisonment on Count Seven (wire fraud), to run concurrently with Count Two; 18 months imprisonment on Count Sixteen (money laundering), to run consecutively to Counts Two and Seven; 18 months imprisonment on Count Eighteen (money laundering), to run consecutively to Count Sixteen; and, 19 months imprisonment on Count Twenty (felon in possession of firearm), to run consecutively to Count Eighteen, for a total of 175 months imprisonment.  (Doc. 84, p. 2)  Three years supervised release was imposed on each count, to run concurrently; no fine was imposed; a total of $906,665.11 in restitution was ordered, with interest waived; and, a total of $500.00 in special assessments was imposed.  (Id.)  Judgment was entered by the Court on January 8, 2016. (Doc. 86)  Blount did not pursue a direct appeal.

On June 29, 2016, Blount filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion").  (Doc. 91)  The motion raises three grounds for relief: (1) ineffective assistance of counsel due to trial counsel's failure to file an appeal; (2) that the sentences imposed for money laundering and felon in possession of a firearm are invalid based on *Johnson v. United States*, — U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015); and, (3) that

the convictions for wire fraud and mail fraud were obtained in violation of due process based on prosecutorial misconduct because the evidence was insufficient to prove the crimes presented to the grand jury. (Doc. 91, p. 4)  More specifically, Blount contends that he specifically instructed his counsel to file a notice of appeal, but that his counsel failed to do so. (Doc. 91-1, pp. 3-4)  He alleges that the guidelines applicable to his money laundering and felon in possession of a firearm convictions, U.S.S.G. §§ 2S1.1 and 2K2.1 respectively, are unconstitutionally vague in light of *Johnson*. (Doc. 91-1, pp. 5-11)  Further, he argues that his wire fraud and mail fraud convictions "were obtained on insufficient evidence and in violation of the Fifth Amendment Due Process Clause based on knowing prosecutorial misconduct." (Doc. 91-1, pp. 11-18)

Blount filed an amendment/supplement to his motion on July 14, 2016. (Doc. 97)  In his amendment, Blount referred to the PSR to argue that his offense level "was calculated under the now invalidated Guidelines Section USSG § 2S1.1(a) and (b)." (Doc. 97, p. 1)  Blount also argued that his prior convictions for aggravated assault, kidnapping, and embezzlement, "used to increase and enhance the criminal history category are unconstitutionally vague," citing the United States Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016). (Doc. 97, pp. 1-2)

Blount filed another amendment/supplement to his motion on August 1, 2016. (Doc. 98)  In this amendment, Blount argued that the restitution award was unconstitutional in light of *Southern Union Company v. United States*, 567 U.S. 343, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012). (Doc. 98, pp. 1, 3)  Blount contends that it was improper for the Government to solicit "so-called victims" whom "were submitting false claims." (Doc. 98, pp. 2-3)  He submits that the restitution amount is the same amount used for calculating his offense level under USSG § 2S1.1, which he argues is

unconstitutional under *Johnson*.  (Doc. 98, p. 2)

The United States' response in opposition to the motion was filed on October 3, 2016.  (Doc. 103)  Attached to the response are four exhibits: (1) a Notice of Non-Appeal signed by Blount on January 12, 2016 (Doc. 103-1); (2) Blount's hand-written Motion to Appeal dated January 11, 2016, with his notation "Please Disregard" at bottom left along with his signature and the date January 19, 2016 (Doc. 103-2); (3) counsel's hand-written notes dated January 12, 2016 (Doc. 103-3); and, (4) the affidavit of James B. Pierce executed on September 27, 2016 (Doc. 103-4).

Blount filed a reply on January 24, 2017.  (Doc. 110)  In it, he claims that he only signed the Notice of Non-Appeal because his counsel threatened him that "his wife would get slammed" if he appealed.  (Doc. 110, p. 2)  Blount also alleges that after reconsidering, he "then filed a second request to file a notice of appeal, [and] counsel again used the same request to withdraw it."  (Id.)

A final amendment/supplement to Blount's motion was filed on April 19, 2017.  (Doc. 119)  Blount states that his counsel threatened him at the time of plea, and that Blount "made several statement(s) during sentencing that the government lied as well as counsel about the plea agreement."  (Doc. 119, p. 1)

The undersigned held an evidentiary hearing on June 28, 2017.  (Doc. 129)  Four witnesses appeared and testified for the Government: Rafael Marquez (an interpreter/investigator for the Federal Public Defender's office); James B. Pierce (Blount's trial counsel); Special Agent Tim Arsenault (Internal Revenue Service - Criminal Investigation Division); and, Special Agent Brent Young (Homeland Security - Criminal Investigation Division).  Blount appeared in person and testified on his own behalf.

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).  A thorough review of Blount's motion (as amended and supplemented), the files and records of this case, and the evidence presented at the evidentiary hearing, conclusively shows that Blount is not entitled to relief, and the undersigned recommends the denial and dismissal of Blount's § 2255 motion with prejudice.

### A.  Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688.  Review of counsel's performance is highly deferential, and there is a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (quoting *Strickland*, 466 U.S. at 687).

The *Strickland* test applies to claims, like Blount's, that counsel was constitutionally ineffective for failing to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *Id*. (internal citations omitted). This is so "because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice;" failure to do so cannot be considered a strategic decision, as "filing a notice of appeal is a purely ministerial task;" and, "the failure to file reflects

-9-

inattention to the defendant's wishes." *Id*.  As for prejudice, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id*. at 484.  Thus, an attorney's failure to file a notice of appeal after being instructed to do so by his client constitutes ineffective assistance of counsel entitling a petitioner to § 2255 relief, with no inquiry into prejudice or likely success on appeal being necessary.  *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (citing *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000) and *Roe v. Flores-Ortega*, 528 U.S. at 478).

For such a claim to succeed, however, "the defendant must show that he manifestly instructed his counsel to file an appeal.  *Walking Eagle*, 742 F.3d at 1082 (internal quotation and citation omitted).  "A bare assertion by the petitioner that [he] made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id*.

### B.  Blount's Failure to File Appeal Claim Lacks Merit

Blount claims that he "steadfastly requested that his counsel file a direct appeal." (Doc. 110, p. 2)  Blount maintains that: "The record shows that petitioner filed a request for an appeal and due to counsel's advice, withdrew it.  The petitioner then filed another request for an appeal in which counsel used the very first request for a withdrawal of both."  (Doc. 110, p. 5)  Upon careful consideration, I find Blount's claim to be contrary to the credible evidence of record.

There is no dispute that a notice of appeal was never filed.  The credible evidence shows that no appeal was filed because Blount, after consultation with counsel, voluntarily chose not to appeal.  Blount has alleged, and testified at the evidentiary hearing, that he instructed his counsel to file an

appeal at the conclusion of the sentencing hearing held on January 5, 2016.  According to Rafael Marquez ("Marquez"), an interpreter/investigator for the Federal Public Defender's office who was present at the sentencing, Blount was distraught at the time his sentence was imposed.  Marquez did not recall Blount stating a desire to appeal at sentencing; Blount wanted to think about it, and he was told that Marquez and counsel would come to see him to discuss an appeal.  In contemporaneous notes prepared by Marquez, he documented that at the sentencing hearing  "[c]lient wants to think about whether to appeal." (Government Exhibit 16, p. 4)  The following day, January 6, 2016, Marquez met with Blount, and Blount was still undecided about an appeal.  (Id.)  Marquez, whom I find to be a credible witness, testified that during his discussions with Blount concerning an appeal he told Blount they would file an appeal if he wanted them to, and that he said nothing to Blount to discourage an appeal.

Blount's counsel, James B. Pierce, testified that Blount was uncertain about an appeal immediately following the sentencing hearing.  This is also reflected in contemporaneous notes prepared by Pierce.  (Gov't. Ex. 16, p. 7)  Pierce explained that there is no incentive not to file an appeal, and that his office employs staff to work on appeals and actually benefits from the statistics when appeals are filed.  On January 12, 2016, one week after the sentencing hearing, Pierce met with Blount.  Pierce delivered a copy of the Court's Judgment to Blount, and they discussed potential issues for an appeal.  (Gov't. Ex. 16, pp. 4, 11; Doc. 103-3)  Pierce emphatically denied having threatened Blount not to appeal because "his wife would get slammed" or "severely prosecuted," and he noted that Mrs. Blount had already been sentenced.  I find Pierce's testimony on this point to be credible, and it is further supported by the fact that Blount's wife had already been sentenced on October 27, 2015, over two months before Blount's sentencing.  (Case No. 3:15-cr-30002-PKH-2;

Doc. 74)

Pierce testified, and his notes reflect, that after discussing possible appeal issues, Blount voluntarily chose not to file an appeal. (Doc. 103-3) Pierce presented a Notice of Non-Appeal form to Blount, and Blount signed it on January 12, 2016. The Notice of Non-Appeal form states:

> "I am a defendant in this case, and I have now been sentenced. I know that I have the right to appeal to the 8th Circuit Court of Appeals. I have discussed my case with my attorney and I have decided not to pursue an appeal." (Doc. 103-1)

Pierce related that Blount told him, however, that he had already sent a letter to the Clerk of the Court requesting an appeal, but he wanted that to be disregarded. (Doc. 103-3; Gov't. Ex. 16, pp. 4, 13) Pierce informed a member of his staff, Rose Riggs, about this, and Ms. Riggs sent an e-mail to the Clerk's office and to Chief Judge Holmes' Courtroom Deputy to notify them of Blount's instructions to disregard his letter to the Clerk requesting an appeal. (Gov't. Ex. 16, pp. 4, 16) Ms. Riggs also continued to make inquiries about the cost of the transcript for an appeal just in case Blount changed his mind at the last minute. (Gov't. Ex. 16, pp. 4, 7, 12, 14, 15)

On January 19, 2016, Blount's Motion to Appeal of Sentence and Restitution[3] was received in the Federal Public Defender's box in the Clerk's office, and it was forwarded on to Pierce. (Gov't. Ex. 16, pp. 4, 17) Pursuant to Blount's instructions, the document was not filed, and Ms. Riggs checked with Pierce to see if he wanted Marquez to visit Blount once again to confirm that Blount still did not want to pursue an appeal. (Gov't. Ex. 16, p. 17) A copy of the document was faxed to Marquez, and he went to meet Blount the afternoon of January 19, 2016. (Gov't. Ex. 16, p. 18)

---

[3] This document is dated January 11, 2016 and post-marked January 12, 2016.

During Marquez's meeting with Blount on January 19, 2016, Blount's demeanor was calm and "matter of fact," and he appeared to know what he wanted to do. Marquez denied saying anything to Blount in an effort to persuade him not to pursue an appeal. At one point during the meeting, Blount asked Marquez if he should appeal the restitution award, and upon Marquez deferring to Pierce about that, Blount then stated, "[n]ah, it's not like I'm gonna pay it, right?" (Gov't. Ex. 16, p. 19) Marquez then asked Blount to write "please disregard" on the document, date it, and sign it, which Blount did. (Doc. 103-2) Marquez testified he had no doubt that Blount did not want to appeal.

Pierce testified that the deadline to file an appeal was January 22, 2016, so there would have been a few days after Blount wrote "please disregard" on his request for an appeal to change his mind and timely file a notice of appeal. Pierce explained that he had been having regular, even frequent, contact with Blount, and that Blount often called him from the jail. Letters Blount sent directly to Chief Judge Holmes during the case were also introduced in evidence to demonstrate Blount's willingness to reach out directly to the Court if he had a concern. (Government Exhibits 24 and 25) After his meeting with Marquez on January 19, 2016, Blount never contacted Pierce or the Court again (until the filing of his § 2255 motion).

In his testimony at the evidentiary hearing, Blount stated that he was transported out of the Sebastian County Detention Center shortly after his meeting with Marquez on January 19, 2016, and that he did not have time to communicate further with Pierce or the Court about his desire to appeal. A transport record, however, reveals that Blount was not transported out of the Sebastian County Detention Center until January 25, 2016. (Government Exhibit 35) Blount, therefore, did have ample time to communicate with Pierce or the Court if he had changed his mind and wished to

pursue an appeal.

Blount testified that just as he was being taken to the Bureau of Prisons he left an envelope containing another request to appeal with someone at the Sebastian County Detention Center to send on to the Court.  There is, however, no other proof of this, and I do not find Blount's testimony about the matter to be credible.  Blount had been in regular contact with Pierce; he had no inhibitions about communicating directly with the Court; and, he had sufficient time after his meeting with Marquez on January 19, 2016 in which to express a desire to appeal.  Notably, Blount never called or wrote to Pierce or the Court to check on the status of any such second request for an appeal.  In my view, Blount's allegations on this point were a fiction created to establish a question of fact to obtain an evidentiary hearing on the issue.  In view of the evidence presented at the hearing, I find Blount's claim that he sent a second request for an appeal, and that Pierce somehow used the same "please disregard" notation to avoid its filing, to be completely unsubstantiated and fanciful.

Blount did not file a notice of appeal because, as the credible evidence of record demonstrates, he had calmly and voluntarily decided not to pursue an appeal.

Contrary to Blount's allegation that he "steadfastly requested that his counsel file a direct appeal," the evidence of record clearly and unequivocally shows otherwise.  Blount has failed to establish that he manifestly instructed his counsel to file an appeal, and his bare assertion that he made such a request is not by itself sufficient to support a grant of relief.  *See Walking Eagle*, 742 F.3d at 1082.  Accordingly, I do not find any deficient performance by Pierce in failing to file a notice of appeal, and this claim should be dismissed.

### C.  No Threats or Misrepresentations Induced the Plea Agreement

In Blount's supplement filed on April 19, 2017, Blount makes vague allegations that his

counsel and the Government lied about the plea agreement and threatened "to prosecute [his] wife."
(Doc. 119, p. 1)  Blount claims that the transcript of the sentencing hearing will show that he "spoke
about how [he] was misled."  (Doc. 119, p. 2)

During the evidentiary hearing, Blount testified that he wanted to do what he could to help
his wife and minimize the consequences she faced in this prosecution.  Mrs. Blount had been
indicted along with Blount (Docs. 13, 42); and, while she had separate counsel representing her
interests, Blount wanted his counsel to negotiate with the Government in an effort to assist his wife.
Pierce testified that after Blount had been charged and arrested on the criminal complaint (Doc. 1),
Blount wanted to help his wife potentially avoid prosecution.  Pierce added that once Mrs. Blount
was indicted along with her husband there was not much Pierce could do for her.  Nevertheless,
Pierce confirmed that Blount wanted Pierce to do what he could to minimize any harm to his wife.

Pierce described Blount as being "heavily involved" in the negotiation process leading to the
plea agreement.  They discussed strategies, but according to Pierce the evidence was "pretty
overwhelming."  When confronted with the Government's position regarding a plea agreement,
Pierce told Blount he could choose to go to trial, and Blount stated that he wanted to plead guilty.
The negotiations for a plea agreement included favorable treatment for Blount's wife.  The written
Plea Agreement expressly provided that in exchange for Blount's plea of guilty to the five counts
of conviction, and his agreement regarding forfeiture, the Government agreed to dismiss Blount's
wife from the Superseding Indictment so long as she agreed to enter a plea of guilty to misprison of
a felony, in violation of 18 U.S.C. § 4.  (Doc. 52, ¶ 2)  According to Pierce, Blount was pleased with
this concession.  Pierce also testified that he explained to Blount what misprison of a felony was and
that it was a felony under federal law.

It is well established in the Eighth Circuit that a defendant who pleads guilty waives all non-jurisdictional defects or errors.  *See United States v. Stewart*, 972 F.2d 216, 217-18 (8th Cir. 1992) (citing *Hill v. United States*, 928 F.2d 303 (8th Cir. 1991)) and *Smith v. United States*, 876 F.2d 655, 657 (8th Cir. 1989).  Having solemnly admitted his guilt in open court, Blount may only attack the voluntary and intelligent character of his guilty plea by showing that the advice he received from Pierce was not within the range of competence demanded of attorneys in criminal cases.  *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.").  Blount has failed to make any such allegation or showing.

In his written Plea Agreement, Blount admitted that he had read the agreement and carefully reviewed every part of it with his counsel.  (Doc. 52, ¶ 40(a))  Blount represented that he fully understood the agreement, and that no promises, agreements, understandings, or conditions had been made or entered into in connection with his decision to plead guilty except those set forth in the written Plea Agreement.  (Doc. 52, ¶¶ 40(c), (d))  Blount stated that he was "satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters relating to it."  (Doc. 52, ¶ 40(d))  Finally, Blount confirmed that he had entered into the Plea Agreement "freely, voluntarily, and without reservation," and that his desire to plead guilty was "not the result of threats or coercion directed at the defendant or anyone connected with the defendant."  (Doc. 52, ¶ 40(e))

At his change of plea hearing on May 19, 2015, Blount confirmed that he was "fully satisfied with the counsel, representation, and advice" he had received from Pierce.  (Doc. 104, p. 5)  He

informed the Court that the written Plea Agreement had been explained to him by Pierce; that he had

an opportunity to read and discuss the Plea Agreement with Pierce before he signed it; that he

understood the Plea Agreement, and it contained his full understanding of what he and Pierce had

negotiated with the Government; that nobody made any promises or assurances to him of any kind

to sign the Plea Agreement other than what was in the agreement itself; that nobody had in any way

attempted to force him to plead guilty; and, that he was pleading guilty on his own free will and

accord because he was guilty.  (Doc. 104, pp. 6-7)  At his sentencing hearing held on January 5,

2016, Blount again represented to the Court that he was "satisfied with the counsel, representation,

and advice" he had received from Pierce.  (Doc. 127, p. 6)  Pierce testified at the evidentiary hearing

that it was apparent to him that Blount was familiar with the criminal justice system, but Pierce took

care to explain the federal system to Blount.

It was apparent from Blount's testimony at the evidentiary hearing that he hoped his wife

would avoid serving any prison time.  He believed that by enabling her to plead guilty to misprison

of a felony she would "miss prison."  Sandra Blount was sentenced on October 27, 2015 to 12

months imprisonment, one year of supervised release, no fine, and a $100.00 special assessment.

(Case No. 3:15-cr-30002-PKH-2; Docs. 74, 75)  This sentencing result caused Blount to feel that he

had been misled or lied to by his counsel and the Government regarding the favorable treatment his

wife was to receive.

Blount was sentenced on January 5, 2016, well after his wife's sentencing.  He alleges that

he spoke up at his sentencing about how he had been misled.  (Doc. 119, p. 2)  The transcript of the

sentencing hearing fails to support that allegation.  Blount both testified at the sentencing hearing

and gave an allocution statement.  Most of Blount's testimony related to his contention that many

-17-

of the victims' losses were not correct.  He stated, "I don't want people to pad these things and get more than what they know is reasonable, what they agreed to. . . . all of these victims here, there's so many that aren't victims."  (Doc. 127, p. 190)  When asked by the Government's counsel whether some missing motors "are at your brother's and your wive[']s hid them," Blount denied it, laughed, and responded:

> "My wife wouldn't hide anything.  She's never done nothing wrong in her life. I got her in the mess she's in now.  You guys sent her to prison telling me, oh, sign this Plea Agreement.  We will give her a misprison.  *I'm thinking misprison means miss prison.*  There we are. So who's telling different stuff here?"

(Doc. 127, p. 194:11-20) (emphasis added)

That bit of testimony is the only instance in which Blount suggested that he had been lied to or misled by the Government leading to the plea agreement.  The record plainly shows, however, that Blount's plea agreement was not induced by any threat to prosecute his wife, as she had been indicted along with him and was already being prosecuted.  There also can be no doubt that no promise was made and contained in Blount's plea agreement that his wife would avoid prison time. That was, I find, simply wishful thinking by Blount, and not something rooted in any specific language contained in his plea agreement.

Blount has failed to demonstrate constitutionally deficient performance on the part of his counsel in connection with the plea negotiations for the following reasons: first, Blount has never claimed that he wanted to proceed to trial; second, his plea agreement permitted him to plead guilty to five of the 20 counts brought against him in the Superseding Indictment; and, third, his counsel was effective in negotiating very favorable treatment for Blount's wife in Blount's plea agreement. Under such circumstances, the Court cannot reasonably conclude that Pierce did not act "within the

range of competence demanded of attorneys in criminal cases."

The Court also notes that where a defendant has pleaded guilty, courts have rejected claims that defense counsel was ineffective for failing to obtain a more favorable plea agreement. *See, e.g., Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006); *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986); and, *Estabrook v. United States*, 2012 WL 4981147 (D.N.D. 2012)(citing *Bethel* and *Craker*) (claim that defense counsel was ineffective for failure to negotiate a more favorable plea agreement failed to properly allege prejudice and was deficient as a matter of law). And here, one step more removed, Blount's claim is essentially that Pierce should have negotiated a more favorable plea agreement for Blount's wife, whom Pierce did not represent and owed no duty to.

In order to show *Strickland* prejudice, pursuant to *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), Blount must show a reasonable probability that, but for his counsel's errors, he would not have pled guilty and would have insisted on proceeding to trial. Blount makes no such allegation or showing. Blount has, therefore, failed to show any prejudice arising from his claim of ineffective assistance of counsel in the process of plea bargaining.

In sum, by voluntarily and intelligently entering his guilty pleas Blount waived all non-jurisdictional defects and errors that occurred prior to his guilty pleas; he has not alleged, nor shown, that his guilty pleas were involuntary and unintelligent; he has not shown deficient performance by his counsel in connection with the plea negotiations; and, he has not shown any prejudice resulting from any alleged ineffective assistance of counsel in connection with the plea negotiation. Accordingly, Blount's claim that his plea agreement was induced by threats or misrepresentations made by counsel or the Government should be denied.

-19-

### D.  Blount's Non-Ineffective of Assistance Claims Are Procedurally Defaulted

None of Blount's remaining claims involve ineffective assistance of counsel.  Since none of these claims were raised in a direct appeal they are procedurally defaulted.

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal citations omitted).  Relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).  The circumstances under which a guilty plea may be attacked on collateral review are strictly limited, and "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).  Even the voluntariness and intelligence of a guilty plea can be attacked on collateral review *only* if first challenged on direct review, as "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. United States*, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (internal quotation marks and citation omitted). "[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id*.

Blount did not pursue any relief on direct appeal.  As discussed above, after consultation with his counsel, Blount voluntarily and intelligently chose not to file an appeal.  By choosing not to do so, Blount has procedurally defaulted the remaining constitutional claims he now raises.

This procedural default may be excused only if Blount "can show both (1) a cause that

-20-

excuses the default, and (2) actual prejudice from the errors that are asserted." *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997) (quoting *Bousley v. Brooks*, 97 F.3d 284, 287 (8th Cir. 1996)); *Apfel*, 97 F.3d at 1076; and, *Frady*, 456 U.S. at 167-68. "For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Blount makes no such showing here. He fails to demonstrate how the factual or legal basis for his constitutional claims was not reasonably available to him in time to pursue relief on direct appeal. Blount claims that his sentences for money laundering and felon in possession of a firearm are unconstitutional in light of *Johnson*, but that case was decided on June 26, 2015, long before Blount's sentencing on January 5, 2016. Blount also argues that his wire fraud and mail fraud convictions were obtained in violation of his Due Process rights based on prosecutorial misconduct, but again, the facts underlying such a claim were available to him in time to raise the issue in this Court and on appeal. Both Marquez and Pierce testified that they carefully reviewed the Government's discovery materials with Blount, including the documents related to the Don Dennis transactions at issue. Marquez stated that Blount never disputed the Don Dennis documents during those meetings. Pierce testified that he took care to review the factual basis in the Plea Agreement for the wire fraud and mail fraud charges with Blount. Moreover, the factual basis for these offenses was set forth in lengthy detail by the Government during the change of plea hearing on May 19, 2015, and Blount admitted that the Government could prove those facts at trial. Blount was, therefore, clearly aware of these issues and any potential claims prior to his guilty pleas and in time to pursue relief on direct appeal. He simply chose not to do so.

Further, there is no assertion by Blount that some interference by government officials, or some external impediment, prevented him from raising his constitutional claims in the trial court or on direct appeal.

Since Blount has not shown adequate cause to overcome the procedural bar in his case, the Court need not consider the issue of actual prejudice. *Ashker v. Class*, 152 F.3d 863, 871 (8th Cir. 1998) (citing *Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). Even so, Blount has presented absolutely no new, reliable evidence to support his challenge to the voluntary and intelligent nature of his guilty plea. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Blount has failed to demonstrate "cause and prejudice" or a "miscarriage of justice" to overcome the procedural default of the constitutional claims he now asserts, and these claims should be dismissed.

Even if the Court were to consider the merits of Blount's claims, they are all without merit.

**E.  U.S.S.G. §§ 2S1.1 and 2K2.1 Are Not Invalidated By *Johnson***

Blount claims that the sentences imposed on his money laundering and felon-in-possession of firearm convictions are unconstitutional in light of *Johnson*. (Doc. 91, p. 4; Doc. 91-1, pp. 5-11) Blount is mistaken that *Johnson* invalidates these Guidelines sections.

Blount asserts that, "[t]he ruling in *Johnson* governs the unconstitutional use of the residual clause that was located in the Guidelines." (Doc. 110, p. 3)  This, of course, is simply incorrect as *Johnson* arose under the "residual clause" of the Armed Career Criminal Act of 1984 (the "ACCA"),

-22-

codified at 18 U.S.C. § 924(e)(2)(B), and not under the United States Sentencing Guidelines.  As the Government points out, Blount received no enhancement of his sentence due to the ACCA, so *Johnson* is inapplicable.  (Doc. 103, pp. 4, 15-16)

Blount did recognize that *Beckles v. United States*, — U.S. —, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016) would have a bearing on his claim.  (Doc. 110, p. 4)  The Supreme Court granted certiorari in that case to address whether the language found in U.S.S.G. § 4B1.2(a)(2), defining a "crime of violence" for career offender purposes under the Sentencing Guidelines, is constitutional in the wake of *Johnson*.  For the reasons and upon the rationale set forth in *Beckles v. United States*, — U.S. —, 137 S.Ct. 886, 197 L.Ed.2d 145 (2017), the Supreme Court held that the advisory Sentencing Guidelines, including § 4B1.2(a)(2)'s residual clause, are not subject to void for vagueness challenges under the Fifth Amendment Due Process Clause.  In so ruling, the Supreme Court observed that: the prior system of purely discretionary sentencing was constitutionally permissible; the Guidelines merely guide the district courts' discretion; all of the required notice was provided by the applicable statutory range, which established the permissible bounds of sentencing discretion; and, the Guidelines do not implicate concern with arbitrary enforcement since they do not prohibit any conduct or establish minimum and maximum penalties for any crime.

The *Beckles* decision was written more broadly than being limited to the residual clause of the career offender guideline, U.S.S.G. § 4B1.2(a)(2).  The Supreme Court's rationale and ruling make it clear that *the Sentencing Guidelines*, and not just the residual clause of § 4B1.2(a)(2), are not subject to a vagueness challenge under the Due Process Clause.  *Id*., 137 S.Ct. at 892, 897. *Beckles* thus clarifies that the rule in *Johnson* does not extend to Guidelines applications.

Blount's claim that the Guidelines sections used to calculate his sentence, U.S.S.G. §§ 2S1.1

and 2K2.1, are unconstitutional based on *Johnson* fails under the ruling in *Beckles*.

### F.  Blount's Wire Fraud and Mail Fraud Claims Lack Merit

Blount alleges that his "convictions in violation of 18 USC § 1341 and 1343 were obtained on insufficient evidence and in violation of the Fifth Amendment Due Process Clause based on knowing prosecutorial misconduct," and he adds, "[t]he fictitious nature of the operation made the investigation so outrageous as to warrant dismissal of the indictment."  (Doc. 91-1, p. 11)  Upon a thorough review of the record and consideration of the evidence presented at the evidentiary hearing, I find the only thing fictitious and outrageous is Blount's claim that there was insufficient evidence to support his wire fraud and mail fraud convictions.

Blount's claim centers upon the evidence that a victim, Don Dennis of Gig Harbor, Washington, agreed to purchase a 1955 Chevrolet Bel Air from Blount.  In essence, Blount asserts that the evidence is insufficient to prove that Mr. Dennis completed his purchase of the vehicle, and that "[t]here is (sic) no records in evidence to support that Mr. Dennis ever *wired* $5,000.00 to Mr. Blount's bank account," and "the government was aware that no such evidence ever existed."  (Doc. 91-1, p. 13) (emphasis in original)  Blount goes on to argue, "[t]here is simply no evidence that Mr. Dennis wired Mr. Blount or Mr. Blount(s) Wife Sandra J. Blount, $5,500.00 in three separate wire transactions to petitioner(s) bank account #9894 to make or complete full payment of the vehicle." (Doc. 91-1, p. 16)  Contrary to Blount's claim, the evidence clearly establishes that Mr. Dennis wired, in three separate transactions, a total of $5,500.00 to the bank account of Blount's wife, and that Mr. Dennis completed payment for the car when he gave Blount $18,000.00 during a meeting in Denver, Colorado.

First, as previously noted, Blount stipulated to the factual basis for his wire fraud and mail

-24-

fraud convictions in his written Plea Agreement.  (Doc. 52, ¶¶ 16(a)-(g))  The factual basis, to which Blount agreed, included the following with respect to payment of the purchase price for the vehicle: that Mr. Dennis agreed to purchase the vehicle for $23,500.00; that Mr. Dennis wired a total of $5,500.00 in three separate wire transactions to Blount's Bank of America account in the Western District of Arkansas as a down payment; that in April, 2013, Mr. Dennis traveled to Denver, Colorado to meet Blount for an inspection of the vehicle; and, that at the meeting in Denver, Mr. Dennis gave Blount $18,000.00 to complete the purchase, and Blount gave the car's title to Mr. Dennis.  (Doc. 52, ¶ 16(b))

The vehicle was not in the condition that Mr. Dennis had expected, so he agreed that Blount could haul the vehicle back to Harrison, Arkansas where Blount would do body work on the car and make other improvements.  (Id.)  On or about May 2, 2013, Blount informed Mr. Dennis that a buyer was interested in the vehicle, and Blount asked Mr. Dennis to send him the title to the vehicle so it could be sold to another buyer.  (Doc. 52, ¶ 16(c))  On May 2, 2013, Mr. Dennis put the title to the vehicle in an envelope addressed to Blount in Harrison, Arkansas, for delivery by United Parcel Service.  (Doc. 52, ¶ 16(d))  Blount caused this mailing to further defraud Mr. Dennis so Blount could sell the car to another buyer and keep the money; thereafter, Blount sold the car to an individual in Kansas for $25,000.00, and Blount never told Mr. Dennis about the sale.  (Id.)  Blount's fraud continued, as over the following 18 months he continued to get money from Mr. Dennis in connection with repair work he claimed to be doing, when in truth and fact, Blount had already sold the car.  (Id.)

During Blount's change of plea hearing on May 19, 2015, a factual basis for Blount's guilty plea to the wire fraud and mail fraud charges was presented to the Court.  (Doc. 104, pp. 16-19)

When asked by the Court if he agreed that the Government could prove the facts set forth in the presentation of the factual basis for the charges if the case went to trial, Blount stated, "[y]es, sir." (Doc. 104, p. 23)  Pierce also agreed that the Government could prove all of the essential elements of the charged offenses beyond a reasonable doubt.  (Id.)  Pierce confirmed this during the evidentiary hearing, stating that he carefully reviewed the factual basis set forth in the plea agreement, and that the colloquy with the Court during the change of plea set forth a sufficient factual basis for the charges.

During Blount's sentencing hearing on January 5, 2016, the Court addressed objections made by Blount to the loss amounts asserted by certain victims, but Blount stipulated that the amount of loss suffered by Mr. Dennis was $28,050.00.[4]  (Doc. 127, p. 90)

During the evidentiary hearing held on June 28, 2017, documentary evidence of the payments made by Mr. Dennis to Blount was received in evidence.  (Government Exhibits 27-32)  FPD investigator Marquez, who had reviewed the discovery and was present with Pierce during discussions of the evidence with Blount, testified that Blount never disputed these documents. Pierce testified that he had received and reviewed all of the Government's discovery in this case, and that flow-charts and supporting documents were provided for the various victims.  Pierce stated that he went over all of this with Blount several times.  Pierce was familiar with the documents related to the wire fraud and mail fraud charges involving Mr. Dennis, and he characterized Blount's allegation that there was insufficient evidence to support those charges as "a mischaracterization of fact."  Pierce testified that Government Exhibits 27, 28, and 30 document the wire transfers totaling

---

[4] This amount includes the purchase price of $23,500.00, plus $4,550.00 paid by Mr. Dennis for the additional repairs that were never performed by Blount.

$5,500.00 into Blount's wife's bank account for the down payment of the car, and that Government Exhibit 29 is the $18,000.00 check Mr. Dennis gave to Blount in Denver to complete payment of the purchase price for the car. Concerning payments made by Mr. Dennis for the additional work to be done on the car, Government Exhibit 31 documents an October 24, 2013 wire transfer of $2,000.00 from Mr. Dennis to Blount's bank account for work on the car. Government Exhibit 32 is a check dated March 30, 2014 from Mr. Dennis to Blount in the amount of $2,550.00 for work on the car. The evidence establishes that at the time Mr. Dennis made these two additional payments to Blount, the car had already been sold by Blount to the buyer in Kansas.

Special Agent Tim Arsenault testified at the evidentiary hearing concerning the Don Dennis transactions. A flow-chart he prepared in connection with these transactions was received in evidence. (Government Exhibit 23) SA Arsenault explained that the wire transfers and check paid for the car, and that Blount gave Mr. Dennis the title to the car on April 14, 2013. On May 2, 2013, Blount convinced Mr. Dennis to send him the title back. Blount then sold the car to Glenn King in Kansas on May 7, 2013 for $25,000.00. Mr. Dennis was not aware of the sale of the car until SA Arsenault told him during the course of the investigation, and according to SA Arsenault, Mr. Dennis was distraught.

The evidence in support of Blount's guilty pleas and his convictions for wire fraud and mail fraud is overwhelmingly clear. Blount's claim challenging the sufficiency of these convictions should be dismissed.

### G. Blount's Prior Convictions Were Properly Used to Calculate His Criminal History

In his supplement filed on July 14, 2016, Blount alleges that his prior convictions for aggravated assault, kidnapping, and embezzlement "are unconstitutionally vague." (Doc. 97, p. 1)

-27-

He contends that these prior convictions, "under the residual clause," are unconstitutional, and he cites *Mathis v. United States*, — U.S. —, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016). (Doc. 97, p. 2) The argument is baseless.

The issue presented in *Mathis* concerned whether a prior conviction could serve as a predicate offense for enhancement under the ACCA. The Supreme Court in *Mathis* held that a prior conviction does not qualify as the generic form of a predicate violent felony offense listed in the ACCA if an element of the crime of conviction is broader than an element of the generic offense because the crime of conviction enumerates various alternative factual means of satisfying a single element. No enhancement under the ACCA was applied in Blount's case, and *Mathis* is inapplicable.

Blount appears to confuse an ACCA enhancement with the calculation of his criminal history score under the Guidelines. Blount did receive criminal history points for his prior convictions for aggravated assault and kidnapping in Madison County Circuit Court, Mississippi (three points assessed) (Doc. 79, ¶ 237), and for his embezzlement conviction in Lincoln County Circuit Court, Mississippi (three points assessed) (Doc. 79, ¶ 238). Assessment of these criminal history points was proper pursuant to U.S.S.G. § 4A1.1(a) in that each prior sentence of imprisonment exceeded one year and one month, and pursuant to U.S.S.G. § 4A1.2(e)(1) in that the prior sentences were imposed or resulted in incarceration within 15 years of Blount's commencement of the instant offenses.

It is also noteworthy that despite making 34 objections to the PSR, none of those objections related to the calculation of Blount's criminal history score or criminal history category. (Doc. 71) "A fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant." *See United States v. Abrica-Sanchez*, 808 F.3d 330, 334 (8th Cir. 2015) (quoting *United*

*States v. White*, 447 F.3d 1029, 1032 (8th Cir. 2006)).

Accordingly, there is no factual or legal basis to support Blount's claim that his criminal history was improperly calculated.

### H.  Blount's Claim Regarding Restitution is Not Cognizable Under § 2255

In his supplement filed on August 1, 2016, Blount argues that the restitution ordered by the Court is unconstitutional.  (Doc. 98)  His argument is two-fold: first, that the restitution amount is the same figure that was used to determine his offense level under U.S.S.G. § 2S1.1, which he argues is unconstitutional under *Johnson*; and, second, that the amount of restitution must be treated as an element of the offense subject to the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  (Doc. 98, pp. 1-3)  Neither contention has merit, and a challenge to restitution is not cognizable under § 2255.

As with Blount's earlier *Johnson* argument, he reads *Johnson* much more broadly than the Supreme Court intended.  The calculation of restitution has nothing to do with the residual clause of the ACCA at issue in *Johnson*, and *Beckles* makes clear that *Johnson* has no application to the Guidelines.

Blount cites *Southern Union Co. v. United States*, 567 U.S. 343, 132 S.Ct. 2344, 183 L.Ed.2d 318 (2012) for the proposition that the amount of restitution must be treated as an element of the offense requiring proof beyond a reasonable doubt.  In *Southern Union Co.*, the Supreme Court held that the district court engaged in judicial fact-finding that enlarged the maximum punishment defendant faced beyond what the jury's verdict or defendant's admissions allowed, and that the *Apprendi* rule applied to the imposition of criminal fines.  The issue concerned the number of days the defendant knowingly stored hazardous waste without a permit.  The jury was not asked to

determine the precise duration of the violation, and defendant argued that the court's instructions permitted conviction if the jury found even one day of violation which could result in a single-day penalty of $50,000.00. Based on information presented in a PSR, the district court determined the maximum potential fine was $38.1 million, and an actual fine of $6 million and a "community service obligation" of $12 million were imposed. Under such circumstances, the Supreme Court in *Southern Union* held that the rule of *Apprendi* applies to the imposition of criminal fines. It did not, as Blount argues, make restitution awards subject to *Apprendi*.

That question was decided by the Eighth Circuit Court of Appeals in *United States v. Carruth*, 418 F.3d 900 (8th Cir. 2005), when the Court held that neither the *Apprendi* nor the *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) holdings – that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt – prohibits judicial fact-finding for restitution orders under the Mandatory Victims Restitution Act.[5]

Moreover, because a dispute about restitution does not involve a claim of a right to be released from custody, a prisoner cannot challenge the restitution portion of his sentence in a motion to vacate under 28 U.S.C. § 2255. *Dyab v. United States*, 855 F.3d 919, 922 (8th Cir. 2017) (internal citations omitted).

Blount's claim challenging the constitutionality of the restitution award should be dismissed.

## I.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right. A "substantial showing" is one

---

[5] 18 U.S.C. § 3663A.

demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

For the reasons discussed above, I conclude that Blount has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

I recommend that Blount's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 91), as amended and supplemented, be **DISMISSED with PREJUDICE**.  I further recommend that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of July, 2017.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

-31-